Next case on today's docket is the case of Gregory Gvillo v. DeCamp Junction, Inc., Jim Vultry, and Aaron Klinke. We have Chris Donahue for the appellant, and Mr. Robert Gregory for the appellee, and you may proceed, Mr. Gregory. Mr. Donahue. Goodness. May it please this Court, Mr. Gregory, on behalf of the plaintiff appellant, my name is Chris Donahue. As you're aware, the issue in this case is whether the ordinary negligence standard or the contact sports exception applies for unnecessarily setting up a safe ball field. And assuming, argument, though, that the contact sports exception does apply, is there a question of fact with regards to whether the defendants recklessly disregarded Mr. Gvillo's safety by failing to follow the rules and guidelines set forth by the American Softball Association? Now, I don't want to be too repetitive or too redundant, stop me if I am, but a brief statement of the facts are that DeCamp is a bar slash restaurant, and for many years it has organized, managed, and sponsored a softball league on its property. And Mr. Vultry, who is an agent of DeCamp, testified in this deposition that he was the one responsible for setting up this league, scheduling the meetings, scheduling the games, and more importantly, setting up the ball field. Now, Mr. Gvillo was hurt while he was playing first base during a playoff game, while he was stretched out waiting on a throw from his third baseman. Aaron Klinke, the batter runner, who is now part of this appeal, but he is a defendant, collided with Mr. Gvillo, causing him to be severely injured. At the time of this collision, DeCamp was not following a rule and guideline set forth by the American Softball Association. And what it says is you have to use a double safety bag at first base. And what this is, it's a double safety bag, it's 15 inches by 30 inches, half of it's in fair territory and white, the other half of it's in foul territory, and it's either orange or green. When he got run over, he was stretched out in fair territory. Is that right? Yeah, it's basically a double the size of a regular bag, and the white part's in fair, and the orange and green part's in foul territory. I understand, but my understanding of the facts are the plaintiff was stretched out toward third base. Correct, in fair territory. In fair territory anyway. Correct. I thought someone briefed you, said the third baseman threw it to the home plate side of the bag. He threw it, when he stretched out, he stretched out kind of like at an angle between third and home plate. So he was still in fair territory, but it was kind of at an angle. If he hadn't have caught it, the throw would have been between first base and home plate. Yes. Okay. So he threw it on the inside of the bag. Correct. But his whole body was in fair territory at the time. How many games did your client play? For the whole season, I don't know how many games. On this field ever? I have no idea. I do know that they played an entire league out there this summer. With the same base configuration? Same base configuration. This was the first playoff game for that summer. So what would be the approximate cause? How do you connect that if they had been following these regs? Well, if they would have followed the 15-inch by 30-inch base, there would be a question of fact whether it would have prevented the injury or not. I don't know if it would have. Can you kind of describe for me hypothetically how that could happen? Well, with the proper base, you have an extra 15-inch base in foul territory. So with that 15 inches, it would be really hard for Mr. Klinke to claim that he did this accidentally because you have that extra 15 inches. In this situation, he claims that he did it accidentally because they were so close in proximity. But with the double safety bag, it would be really hard for him to claim that because you have that extra 15 inches. We're not here on his count, though, right? We're not here on his count. But in the facts, Mr. Gavillo stated that he believed Klinke did it intentionally and DeKamp acted recklessly. Klinke claims that the whole thing was an accident. So either way you look at it, it may not have prevented the injury, but with the double safety bag, you could argue that the whole thing would have never happened because you have that extra 15 inches. Plus the third baseman would have thrown it to the outfield side of first base. Presumably it never happened. Presumably it may not have happened. He's not named as the defendant, right? No. The third baseman? No, the third baseman. The only person named as the defendant is the batter-slash-runner and the people in charge for setting up the ball. As I understood, too, what the association set up is there's actually a runner's path from home to first base that's in foul territory. Correct. And so what you're saying is if he'd had a path to run all the way to the base and touch first base in foul territory, there'd be absolutely no excuse for a collision under these facts. Under the rules, they have the double safety bag and the three-foot ring. And what it is, it's a guideline to keep them in foul territory. So when you run in the double safety bag, you're in foul territory. It's a preventative measure. Is there anything in the rules to prevent the runner from running in fair territory down to first base and then at the last minute stepping on the green side of the bag that's in foul territory? They're supposed to stay in foul territory no matter what. Do the rules say that? Yes. They cannot run in fair territory? If they run in fair territory and they hit the batter, then they're presumably out. But if they're in foul territory. Well, that's way off. That's way off. But with this guide, with this three-foot chalk line, that's where the base runner is supposed to be running. Okay. But my question is, is there anything that says what happens if they run in fair territory? If they run in fair territory. Are they automatically out? Or do they just have to wait to get hit by the ball? They either have to get hit by the ball or cause a collision is my understanding. I think if they run in fair territory and even if they throw the ball and the first baseman drops it, they could still argue that there was, even though there wasn't a collision, that there was interference because he was not in the three-foot running lane. But that's not based upon the association of softball, American Association of Softball Rules. That's just general. I believe that's just the general rules of softball, including baseman. Okay. Now, in this case. Let me ask one more question if I can. So what we actually had on the day of this incident was a single chalk line straight from home plate to first base. Correct. And he could run on the foul side of that, right? Correct. If he wanted to. He just didn't. So all this lane that the association requires, does, is it just guides a person. Correct. In other words, I mean, you can still run on the foul ball side of a single line. Correct. And the reason why we believe these ASA rules are relevant, they could have had the proper setup and it may not have avoided the collision. But the ASA rules are relevant because they're preventative measures to help avoid collisions at first base. And Mr. Cavillo, or excuse me, Mr. Moultrie, in his discovery deposition, stated that he was aware of 13 prior collisions at first base before this incident. And what you do is you look to the Karras v. Streeville case. That's the important case in this situation because we're dealing with organizational defendants or non-participant defendants. And when you're dealing with a non-participant defendant, Karras states that you have to make a policy determination upon the circumstances, the inherent risk of the sport, the relationship of the parties to the sport and to each other, whether imposing broader liability on these defendants would harm the sport. Now, in Karras, there were allegations that the referees and the coaches failed to enforce body checking during an actual game of hockey. So, of course, imposing liability in that case would change the way hockey is played. But in this case, we don't believe it would change the way softball is played. The Supreme Court neither intended nor suggested that it was protecting organizational defendants like DeKamp for failing to set up a safe ball field because it was a decision that was made before the game started, it was objectively made, and it was made without any time constraints. Now, back to Karras, they distinguished full contact sports from contact sports, and this is the first case that's brought up full contact sports. But they say the first thing you do is you determine whether the contact sports exception applies. If it doesn't, you follow the ordinary negligence standard. If it does apply, then you look and you determine whether it's a full contact sport. And when you're looking whether it's a contact sport or a full contact sport, you look to the inherent risk and the objective factors surrounding the game. And applying this to our case, there's no reason to apply the contact sports exception. The defendants here were not engaging in conduct inherent in sports. Imposing liability would not change the way they play. But what Karras says, if you determine the contact sport exception applies, then you determine whether it's a full contact sport. And softball has always been a contact sport. Full contact sports are sports like football and hockey, where physical contact is a fundamental part of the way the game is played. But in softball, collisions are a byproduct of the way the game is played. So if you determine the contact sports exception applies, it is a contact sport. It's not a full contact sport. Now, assuming that the contact sports exception applies, we have alleged the willful and wanton reckless disregard, which is the standard of the zone in the contact sports exception. And a full contact sport, let me back up, the duty is to avoid intent to cause injury or conduct that is totally outside the range of ordinary activity. But in softball, it's a contact sport, so you have a duty to avoid willful and wanton conduct. Now, assuming that that is the standard that applies, we allege willful and wanton reckless disregard. IPI 14.01 states that willful and wanton actions are actions that, if not intentional, they show an utter indifference or reckless disregard for the safety of others. Mr. Gavillo and DeCant claim that they did not even know what duty appeared to Mr. Gavillo in this case. Obviously, those in charge of setting up a ball field owe a duty of care to its players. Was your client aware of the rules in the American Softball Association promulgated? I don't know if he was or not. I believe in his deposition he said that he was aware of some of those rules, and he actually brought that up with… So he was aware that he participated in this whole league, your whole season, with this going on? I don't know if he knew the whole time, but I think if you look at the deposition, I think he did state that he brought it up with the defendants somewhere before this incident. I don't know if it was at the very beginning or not. They do have meetings at the beginning of the year, and, for instance, the defendants decided to follow the rules and guidelines regarding the type of bats to use and balls, but they ignored this one. So he chose to continue and ignore it himself? He chose to continue playing. I know he brought it up. I don't know if it was at the beginning, but it was sometime before this collision. Now, willful and wanton conducts includes not just intentional acts, but also reckless acts and omissions. And whether an act is committed by willful and wanton is either intentional or can be committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure of your knowledge of danger to exercise ordinary care to prevent that danger, or a failure to discover that danger by the use of carelessness or recklessness when it could have been discovered by the use of ordinary care. Like I said, Mr. Moultrie testified that he was aware of 13 prior collisions. So the fact that he was aware of these 13 prior collisions and failed to follow the ASA rules are clearly questions of fact for a jury to determine. Now, they were not obligated to follow all the ASA rules. Are there other rules of softball that you're aware of other than the American Association of Softball or whatever it's called? I do know that they have different rules for the college athletes, but I couldn't tell you what they are today. I do know they have the American Softball, and I think NCAA has some rules. Does all the college softball teams, do they have, have they adopted these rules also? I couldn't tell you that. I do know that. Are they under a duty to adopt them? Well, I think that's when you get into the standard of care. I don't know if they actually have to do that. So your opinion would be that they are under a duty to adopt them? I would say it's a standard of care issue. That this is the Holy Grail of softball rules. Correct, and I think that's why you look at the ASA rules, and they're relevant because they're similar to the grinding case that we mentioned in our brief, where evidence of safety standards and rules and regulations are beneficial to help determine what the standard of care was and whether they met that standard. So, just as the introduction and the grinding case of the railroad safety standards are relevant here, the ASA rules are relevant here. Now, it does not conclusively determine what the standard of care is, but I think it helps determine what's known or should have been known, what was feasible, and whether the defendants met that standard. Now, we also mentioned the Murray case, and the Murray case also confirms that if there are sufficient allegations of wolf on one conduct or questions of fact. But in Murray, that case is also similar because in that case, a kid was hurt while playing on a mini trampoline in PE class. It was not a United States gymnastics sanctioned event, but they still looked at the United States gymnastics rules and guidelines to help determine what the standard of care was and whether they met that. So that's similar in this case with regards to the ASA rules. Now, to conclude, I believe it's clear that the ordinary negligence standard applies. The defendants made an objective decision to ignore the ASA rules. They made this decision before the game ever started. They've made this objectively. There were no time constraints or no time pressures. The defendants in this appeal are not referees or coaches. We're not suing them, like in the Karras case, for failing to enforce actual game-playing rules. So imposing liability on deep camp in Moultrie would not have a chilling effect on the way the game of softball is played. Now, however, whether defendants are found liable, that's a completely separate question. However, at this point in the process, we're here to determine what the standard of care is and whether that standard is the ordinary negligence standard or the contact sports exception. I believe we've presented questions of fact with regards to the fact that Moultrie testified that he was aware of 13 collisions. They failed to follow the ASA rules. I believe these are questions of fact, which includes some in the judgment. Were they aware of the rules, the American Softball Association rules? The defendants? Yes. They had meetings at the beginning of the year, and that's when they determined which rules they would follow. They were aware of these specific rules. I believe they were. Now, like I said, whether they're found liable, that's a completely separate question. But I believe we've presented material questions of fact with regards to whether they've recklessly disregarded the safety. All of this includes summary judgment. Therefore, the amendment motion to reconsider and motion for summary judgment, I believe, should be reversed. And this matter remained to the circuit court. Thank you. Thank you. That's the opportunity for rebuttal. Mr. Gregory. Excuse the court, Your Honor. Counsel. I'm Robert Gregory. I'm here on behalf of the defendants, Jim Moultrie, DeKalb Junction, Incorporated. It is our position that Judge Kallis' order granting summary judgment to these defendants was correct. It should be affirmed by this court on appeal. If I understand the plaintiff's brief correctly, he is urging this court to adopt a negligence standard. I'm not clear as to whether or not against both the participant but as to the non-participant defendants in this case. It is clear in the case law that I've cited in my brief report that softball is deemed to be a contact sport, which requires, as a condition preceding the recovery for a plaintiff, that there is proof that the defendant acted either intentionally or in a willful and wanton manner. And the case that holds that is Landrum v. Gonzalez, which was cited in my brief. It indicates clearly and held that softball is a contact sport. The issue that I find to be misleading on behalf of the plaintiff here is the alleged failure of both Moultrie and DeKalb to provide a softball diamond with a double-base, first-base configuration. The Landrum case held that the existence of a duty is a question of law for the court to determine, whereas questions relating to a breach of a duty recognized by the court or proximate causation are questions of fact of the triumvirate. So the primary issue that I think the court is presented with here with regard to this double-bag, first-base system is whether or not this court or any other court would hold as a matter of law that the standard of due care for playing an informal softball game constitutes or mandates the placement of a double-bag, first-base configuration in conformity with amateur softball association's rules of tournament play. Moreover, it is clear in this case that Mr. Moultrie did not make the rules by which the league played. This is an informal league, Your Honors. It is a spring and summertime activity. There are teams that are organized by team captains. The players bring their family and their friends, and they will have something to eat, have a couple beers or a soda, and watch their family members participate in this game. They're both male and female, and I think some co-ed games. Mr. Moultrie's uncontroverted testimony that I set forth on page 5 of my brief with respect to the establishment of the rules that are going to be utilized by the league is that the league managers, the managers of each of the teams that are playing in the league, meet prior to the beginning of the season, and essentially Mr. Moultrie and DPM allow them to have input into what rules are going to play by here. And that's, in fact, what his testimony is. And there's no evidence in the record to controvert Mr. Moultrie's testimony and his deposition. Does Mr. Moultrie work for DeCamp? Yes, he is. And DeCamp is the one that's organizing or sponsoring, I take it, the whole thing? That's correct. The restaurant bar has a ball field out behind its establishment, and that's where these teams play in their summer league. So Mr. Moultrie will have a meeting prior to the beginning of the season and have and accept input from all of the team captains or managers who wish to appear. But you aren't saying that just because they allow the managers to have input that anything could go, are you? No, I'm not saying that, Your Honor. But with respect to how we're going to configure the bases, what type of bats are we going to use? Are we going to use metal bats, wood bats, combination? Those are really matters that the league manages. I can see how you could talk about the balls and the composition of the balls or whatever and metal bats or wooden bats or whatever. But the configuration of the bases, is that something ordinarily talked about at the league? There's no testimony in this case that that came up. Then what would be the difference? Why couldn't you just look at this as saying that they negligently allowed the players to play on a field that was hazardous, in their opinion? Well, because I do not think that ordinary negligence is the standard for organizational defendants such as Dekamp and Moultrie. The standard of liability for organizational defendants was set forth in the Karras versus Travell case. Well, if they had a broken glass out in the outfield or something, what would the standard of care be in that situation? I don't think that this is a case that is analyzed under ordinary premises liability, Your Honor, respectfully. That would be just negligence then, if there was broken glass out in the outfield? That would be perhaps a condition of the playing field. But the issue is whether or not Moultrie and Dekamp are under a duty to provide to the players in an informal softball league a softball diamond configured with a double first base configuration. I want to move away from that a little bit. What about the difference between full contact and contact under Karras? Yes, in Karras versus Travell, the court began its analysis with the Pfister case. Yes, and they talked about putting softball in there, as I recall. Correct. That is correct, Your Honor. And then with respect to the particular defendants, the organizational defendants, as the court referred to that, to the Hockey Association and the Officiating League and so forth, the court applied the contact sport exception of Pfister to organizational defendants, which would require an amendment, willful and wanton misconduct on the part of the organizational defendants in order to recover. But I think the Supreme Court's analysis of this case, at least to me, may be less than clear because they do make a distinction between contact sports, such as softball, and full contact sports, such as ice hockey or football. But with respect to the liability of organizational non-participant defendants, which clearly Moultrie and DeKalb are, at one point in time the court refers to contact sports and then also refers to full contact sports. And in determining that the court was going to utilize a very high standard or burden for the plaintiff to meet in this case, either intentional injury or conduct totally outside the range of acceptable activity involved in coaching or officiating, the court relies upon the California case of Kahn. And the Kahn case had to do with an injury sustained by a female athlete who was on the swimming team. And she was injured, she broke her neck because she dived into a shallow diving pool and was injured. And she sued the school as well as her coach, claiming that the coach pushed her beyond her physical capabilities or inadequately provided her with instruction on how to be safe in the activities she was engaged in. The court in Kahn, which was a non-contact sport, swimming, stated that the standard for liability for a coach, non-participant, was this high burden for the plaintiff to meet, which was that the plaintiff would have to prove that the defendant coach intended to harm her or engage in activity totally outside of the realm of conduct ordinarily associated with officiating, coaching the sport. So I think this, I think that the Supreme Court in Karras does make a distinction between non-contact sports, organizational defendants, non-participant defendants. They've adopted, I think, the Kahn standard in that regard. So at a bare minimum, at a bare minimum, it's willful and lawful. Or reckless disregard. Yes, that could be reckless disregard as well. Which I think they are arguing is applicable here. But the issue is, is this court going to impose the standard of care for any owner of a softball diamond in the state of Illinois to mandate that that softball diamond have a two-base configuration? Well, is that what's being argued? Peter, your clients have a duty of some kind, either to exercise ordinary care or not be engaged in willful and wanton conduct. Right. And then aren't the rules of the, whatever it is, amateur softball association, wouldn't they just be evidence if the trier of fact chose to accept it of whether or not your client engaged in whatever standard of care? You see what I'm saying? I do. I mean, it's not a question of whether they have a duty to install a two-base bag. It's just, you know, this is like any other rule or regulation or voluntary association's guidelines. It's something that can be put into evidence for the trier of fact to consider. Isn't that right? Well, I think this. I mean, I just think you're overstating what has to happen here. Well, I think it assumes that, first of all, this rule is a safety-related rule. There's no testimony on the record that, one, this first-base configuration is, in fact, a safety-related rule. And, two, it also assumes that there's a duty for the defendants in this case to have a two-bag first-base configuration. That's my point. When you use the word duty, I mean, we all know there's no law out there anywhere that says all voluntary softball leagues must conform to the amateur association rules. But that's not the point. Your duty is to not engage in willful and wanton conduct or to exercise ordinary care for the safety of the players or whatever. But then a separate factual issue is whether or not failure to comply with those amateur association rules are evidence of negligence or willful and wanton conduct. And I understand that, of course. Okay. But I think that part of the lower court's analysis of this in the granting of summary judgment was her finding as a matter of law that, based upon the testimony of the plaintiff in this case, that he could not meet the burden of proof, at bare minimum, willful and wanton, if not higher, based upon his testimony that, first of all, no one at D camp, and certainly not Mr. Moultrie, one of the owners, intended to cause him harm. Secondarily, that it is the plaintiff's testimony that Mr. Klinke, the base runner, intended to collide with him at first base. And Mr. Gavillo testified in his deposition in agreement with my question to him that, based upon his testimony that Mr. Klinke intended to collide with him, would there be any difference, whether there was one, two, or six bags at first base? And he said no. So I think that probably part of the court's determination or analysis at the summary judgment motion hearing was taking into consideration all of the evidence in this case and determining as a matter of law that, based upon the plaintiff's own testimony, there was no approximate cause issue with respect to the liability of the defendants in Moultrie and D camp. Let me ask you, I'm not real clear on all the baseball facts of this yet, but if you go under the rules, isn't there a disincentive or something intentional like this to happen? I mean, I thought that there was testimony that if they deliberately were in the wrong lane and caused a collision... If they were struck by the ball, they would be... If they were struck by the ball, then they'd be called out. Right. So wouldn't that be a disincentive to do something like that deliberately? Well, I mean, I guess, Your Honor, that's the case. But, I mean, people... I mean, you know, you see in baseball a brush-off pitch and so forth. I think that this is part of the competitive nature of the sport. Mr. Klenke is going towards first base. I suppose if his conduct was flagrant enough, he could have been ejected. But the simple... Isn't that why we have rules and regs to help kind of keep people in line? Well, we do have rules... That maybe wouldn't stay in line otherwise. Well, we do have rules and regulations to keep people in line. But the courts, particularly the court in Paris, recognize that rule violations are an expected part of competitive sports. And if there is a duty to provide a double-bag, two-base configuration, which we do not, then... But when you say... That's an ultimate question for the jury. But what aren't... They have a duty, and you do agree with that. They have a duty, but... If this is evidence of that duty of care, then why can't the jury hear that? I think the existence of a duty is a question of law for the court. And I think that it is... It's only a question of law for the court if they stand in such a relationship that public policy or whatever declares that it's not a duty that we want to impose. Because we all have a duty of care. Correct. But the court in Paris, as I understand the case, Your Honor, mandated that... To impose liability on non-participant defendants or organizational defendants for failure to follow rules, which is essentially what the Paris decision hinged upon. Because the plaintiff's theory of the case in Paris was predicated on the organizational defendant's failure to enforce the rules against body-checking from behind. Now, we do not see that there is an obligation to... As an owner of a base or softball diamond, to have a two-bag, first-base configuration. But assuming that that's true and that's not following the rules, I think the higher burden on the plaintiff that must be met is that of the Karras case. Now, I think... Didn't Karras talk about... I mean, you have to look at the circumstances of... You do have to look... ...and actually the facts, because Karras involved a question of a chilling effect on the play, the actual play. You know, like, after the fact, dissecting what could have been done by a coach or a referee, where this is anticipatory and setting something up that will, I guess, prevent injuries from occurring. I guess that's their position. Well... But, I mean, does the... It is, I think, our position in that case that if there's no duty as a matter of law to have a two-bag, first-base consideration, is the court suggesting that that is the duty to be imposed on all owners of softball diamonds? And you think that's what would be the outcome if we were to rule that summary judgment was not appropriate in this case? ...or a municipally-owned softball diamond. It just... I find it difficult, Your Honor, to conceive that the court would hold as a matter of law that the duty owed to a plaintiff in an informal softball game would be to configure the first-base in conformity with the Amateur Softball Association rules of tournament play, which, in this case, there's no evidence that this was organized or played in conformity with those rules. And so I do think that in light of that, I think that Judge Kallis' grant of the summary judgment motion to non-participant defendants here for merely furnishing a ball diamond, which looked like every ball diamond I ever played on when I was a kid and most people, I think that grant of the summary judgment was appropriate in light of the fact that there was no evidence that could hold these defendants. Guild. Thank you, Mr. Gregory. Thank you very much. Thank you. Do you have the opportunity for rebuttal? Your Honor, Mr. Gregory is confusing duty with standard of care. We're not claiming that everybody owes a duty to have this double safe bag. They either have a duty to use ordinary care if it's the negligence standards or to avoid willful and wanton conduct if it's the contact sports exception. We've never denied that softball is a contact sport. We've never denied that the standard owed in a contact sport is to avoid willful, wanton, and reckless conduct. However, we're dealing with organizational defendants here. And what the defendant failed to mention is that when you're dealing with an organizational defendant, you have to make a policy determination. Karras states you make a policy determination that rests upon the circumstance of the inherent risk of the sport, the relationship of the parties to each other and to the sport, and whether imposing broader liability on that defendant would change or harm the sport. Now, Karras involves subjective decision-making in the middle of hockeys. Obviously, imposing liability could change the way hockey is played. But here, imposing liability on deep camp and mulchery does not change the game of softball one bit. It does not change the way they run, hit, or throw. It does not change the way they turn a double play. It does not change whether the infield fly rule is in effect. It does not discourage participation, and it does not increase legal liability. Who is responsible for setting up the field before the game in question? Mr. Mulchery was. So, I mean, he went out, lined the bases, got the bases out of storage somewhere, put the bases where they go. I mean, that's what I'm asking. I don't know if it was actually him, but he testified in the discovery deposition that he was the one responsible for setting up the ball field. So they may have an employee who does it anyway. They may have, correct. The teams didn't take care of it. Correct. Or it wasn't kind of – we keep talking about an informal league. I mean, it's not the kind of thing where one side or other has the responsibility of going out first and setting up the field. This was all done by the – And I'll get to that point in a second. Okay. But imposing liability here does not change the game of softball. And the defendants still have not given us one example of how imposing liability on D camp or Mulchery would have a chilling effect on the way softball is played. For example, in most softball games, you can play the entire game without ever having a collision. In most games, you can play the entire game without one player ever coming into contact with another player, either on his or her team or on the opposing team. But Karras pointed out that in sports like hockey and football, that's not the case. Now, I'm not going to stand here and say collisions never occur in softball. They do. But per Karras, when they occur, they occur as a result or a byproduct of the play, not a fundamental part of the game. Now, Mr. Gregory pointed out that he believes this is an informal beer league. He mentioned the Landrum case. The Landrum case is in their brief. The Landrum case states that you look to the objective factors surrounding the game and not to the subjective expectations of the players. For instance, in Landrum, that was the Bakery League case. That's the case where the employees from the bakery went and played on a makeshift diamond. They didn't even play on a real diamond, and they brought their own bases. And the court still ruled that you look to the objective factors surrounding the game, not to the players' subjective expectations. So whether this was an informal league or not, it's really irrelevant. I would argue that it was a formal league because you had standings and you had the playoffs. Would your theory apply to Little League baseball, college baseball? I mean, it would apply to both baseball and softball, right? To both baseball and softball. And I think you look to the AAC rules as a standard of preparing, and I've noticed that. Right. So your theory would impose a duty on any type of organized baseball or softball to have this type of configuration. Is that what you're saying? Well, I don't think it's a duty. The duty is to avoid ordinary care if it's a negligence standard, or to avoid the Wolf on Wadden if it's the contact sports exception. Okay. Well, in order not to be sued, your theory would be that everybody would have to have this type of first base. I think it would come into effect because it's a standard of care issue. And if they were to go insane. For every Little League team, every Quarry League team, every Park District team, every college baseball team, any time you play with the softball or baseball. Well, I'm not going to say that Major League Baseball has to. Why wouldn't it apply to Major League Baseball? Well, a perfect example, Major League Baseball. I've coached Legion Baseball for the last five years. For the last five years. Does it apply to – do you insist on this base in Legion Baseball? Before we start every game, we do not have a double safety ban. Before we start every game, the umpire makes sure we don't have any latent defects in the field. Have you insisted on this type of base? No. Legion does not require that. Well, I mean, this league obviously didn't require it either. Well, I don't think they necessarily have to. It's a standard of care issue. It's not a duty that they have to require. Go ahead. Here, I don't think it's a duty that they have to require. It's a standard of care issue. So you bring up the fact that whether they met this standard or not, it's a decision made by the jury. It's something that they look to to find out what was feasible, whether they met that burden or not. And like I said, here, it does not have a chilling effect on the game, and it does not violate the purpose or the spirit of the contact sports exception. And one last thing. He mentioned the point. We are claiming that the duty of care over on the participant defendant is the contact sports exception. We argue here that the organizational defendant is the ordinary metallurgy standard, but assuming argument that that's not the case, we still allege it with one conduct. So thank you. Thank you, both gentlemen, for your briefs and arguments. Interesting case. We'll take it under five minutes.